**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3569
_____

SANDRO VUKOSAVLJEVIC,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A070-412-835)
Immigration Judge:  John P. Ellington

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 15, 2019
Before: GREENAWAY, JR., RESTREPO and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 23, 2019)
_____

OPINION[*]
_____

PER CURIAM

        Sandro Vukosavljevic petitions for review of a final order of removal.  For the

reasons that follow, we will deny the petition for review.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Vukosavljevic, a native and citizen of Bosnia-Herzegovina, was admitted as a refugee to the United States, and he was granted lawful permanent resident status, effective June 16, 1994. In 2015, Vukosavljevic was convicted in the United States District Court for the District of Maine of two counts of unlawful use of a communication facility to commit a drug trafficking crime, in violation of 21 U.S.C. §§ 843(b), (d), for which he was sentenced to a term of imprisonment of 30 months. On October 10, 2017, the Department of Homeland Security charged him in a Notice to Appear as removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), in that after admission he was convicted of an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(B) (illicit trafficking in controlled substance); and 8 U.S.C. § 1227(a)(2)(B)(i), in that after admission he was convicted of any law relating to a controlled substance.

Initially, Vukosavljevic argued that his convictions were not drug offenses or aggravated felonies. The Immigration Judge sustained the charges. Vukosavljevic applied for relief from removal, claiming that he would be harmed by the Bosnian-Herzegovinian government and/or Muslims who dominate that government because of his Serbian-Orthodox religion. At a hearing on June 6, 2018, Vukosavljevic testified that he is a practicing Serbian-Orthodox Christian and that he came to the United States because of the war in Bosnia. He testified that, as a child, he migrated from Bosnia to Herzegovina and was mistreated there on account of his religion. His family eventually migrated to Croatia, which is predominantly Catholic. His family was moved to the Usuwit village, where they lived "among really racist people when it came to the religion and the beliefs." His parents eventually sought assistance from the United States

2

embassy in Croatia and were granted refugee status. His parents and his brother Sasa are now United States citizens, but he is not.

Vukosavljevic testified that the majority of Bosnians are Muslim, and that the war in 1992 was a religious civil war between Serbians, Catholics, and Muslims, fighting each other to claim a part of the country as their own. He has not returned to Bosnia since 1994 because members of his family were killed or their whereabouts are now unknown. He testified that he suffers from post-traumatic stress disorder due to what he experienced as a child during the war. He fears that Muslims would harm him because of his religion if he returns to Bosnia-Herzegovina, because, if you are not a member of the Muslim majority, you may be threatened, beaten, or even killed. He testified that he has spoken to people who have visited Bosnia and they report that residents there still believe the "old beliefs," and obsess about past injustices and territorial grievances. He believes that the government would turn a blind eye to any torture of Serbian Orthodox Christians by Muslims. Vukosavljevic's brother Sasa also testified on his behalf. Notably, he testified that things have not changed since the war, and that you have to watch where you go because your last name is an indicator of your religious affiliation.

On June 6, 2018, the IJ denied relief. The IJ found that Vukosavljevic's conviction for using a communication device to facilitate drug transactions involving 2,500 grams of cocaine was a "particularly serious crime," and thus denied his applications for withholding of removal. The IJ based this conclusion on the Presentence Investigation Report ("PSR") prepared in Vukosavljevic's criminal case, which stated that the amount of cocaine involved in his offenses totaled 2,500 grams, and on his not

insignificant 30-month term of imprisonment. The IJ further determined that Vukosavljevic did not meet his burden to show it is more likely than not that he would be tortured in Bosnia-Herzegovina. In this regard, the IJ observed that Vukosavljevic's fears were based on the conditions that existed when he was a young child, that he had not proffered evidence to show that he likely would be tortured upon his return Bosnia-Herzegovina, and that there was a part of the country where he would be safe.

In denying relief, the IJ noted that the 2017 and 2016 Religious Freedom Reports indicated that the constitution speaks of two country entities -- Bosnia-Herzegovina (the Federation) and the Republika Srpska – and provides for freedom of religion. Notably, the Republika Srpska constitution establishes the Serbian-Orthodox church as the church of the Serbian people and other persons of the Orthodox religion, and a provision provides for the representation of the three major ethnic groups. The IJ also observed that the majority of Serbian-Orthodox live in Republika Srpska, and that most Catholics and Muslims live in the Federation. The IJ pointed out that the Dayton Peace Accord serves as the country's constitution and provides for freedom of religion, thought, and conscience. The IJ further found that the 2017 State Department Country Report notes that civilian authorities maintain effective control over security forces and law enforcement agencies, and that a State Department travel warning submitted on Vukosavljevic's behalf did not indicate that religious wars and ethnic cleansing are currently happening, but instead, discussed terrorism and land mines. The IJ found no evidence in the Country Report to indicate that Vukosavljevic will likely suffer torture in Bosnia-Herzegovina.

4

Vukosavljevic appealed to the Board of Immigrations Appeals, challenging the IJ's determination that he was ineligible for withholding of removal because he had been convicted of a crime that qualifies as "particularly serious," see 8 U.S.C. § 1231(b)(3)(B)(ii) and 8 C.F.R. § 1208.16(d)(2); and arguing that the IJ erred in determining that he did not show that it was more likely than not that he would be tortured in Bosnia-Herzegovina.[1] He also sought a remand based on a claim of ineffective assistance by his former counsel in violation of his right to due process. Vukosavljevic did not challenge the IJ's determination that his 2015 convictions were aggravated felonies that rendered him removable pursuant to § 1227(a)(2)(A)(iii) and § 1127(a)(2)(B)(i).

The Board held that Vukosavljevic's 2015 convictions – which, the Board noted, involved transporting and distributing a large quantity of cocaine -- did not warrant departing from the general rule that trafficking in a controlled substance is presumptively a "particularly serious" crime. The Board also agreed with the IJ that Vukosavljevic proffered insufficient objective evidence to show that he qualified for deferral of removal under the Convention Against Torture. The Board would not consider Vukosavljevic's due process claim of ineffective assistance of counsel because he had failed to satisfy the procedural requirements for bringing such a claim, as set forth in Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988).

---

[1] Vukosavljevic conceded that his aggravated felonies rendered him statutorily ineligible for asylum under 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i).

Vukosavljevic timely petitions for review. We generally have jurisdiction to review final orders of removal. See 8 U.S.C. § 1252(a)(1). In this case, however, because Vukosavljevic is removable for having been convicted of an aggravated felony, our jurisdiction is limited to reviewing constitutional claims and questions of law. Id. at § 1252(a)(2)(C)-(D); Green v. Att'y Gen. of U.S., 694 F.3d 503, 506 (3d Cir. 2012). We previously denied Vukosavljevic's motion for a stay of removal.

We will deny the petition for review. Where, as here, the Board agrees with the decision and analysis of the IJ while adding its own reasoning, we review both decisions. See Sandie v. Att'y Gen. of U.S., 562 F.3d 246, 250 (3d Cir. 2009). Vukosavljevic first contends that the agency erred when it found that his two convictions pursuant to 21 U.S.C. §§ 843(b) and (d) were "particularly serious crimes," and thus that he is disqualified from seeking withholding of removal. Petitioner's Informal Brief, at 4, 6-9.[2] He contends that the agency failed to conduct an individualized determination of this legal issue based on the particular facts of his case.

We conclude that the agency committed no legal error regarding Vukosavljevic's ineligibility for withholding of removal under either the statute or the Convention Against Torture. An alien who has been convicted of a "particularly serious" crime is not eligible for asylum, 8 U.S.C. § 1158(b)(2)(A)(ii), or withholding of removal, 8 U.S.C. § 1231(b)(3)(B)(ii) and 8 C.F.R. § 1208.16(d)(2). Under Board precedent, an aggravated

---

[2] Vukosavljevic does not contest that that his convictions pursuant to § 843(b), (d) are aggravated felonies as defined by § 1101(a)(43)(B). The issue is thus not preserved and we decline to address it. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).

6

felony involving drug trafficking is presumptively a "particularly serious" crime. Matter of Y-L-, A-G-, & R-S-R-, 23 I. & N. Dec. 270, 274 (A.G. 2002).[3] The Attorney General has set forth six criteria that justify a departure from the presumption that a drug trafficking aggravated felony is a particularly serious crime: (1) the offense involves a very small quantity of illegal drugs; (2) a very modest amount of money was paid for the drugs in the offending transaction; (3) the applicant was merely peripherally involved in the criminal activity, transaction, or conspiracy; (4) there is an absence of any violence or threat of violence; (5) there is an absence of any organized crime or terrorist organization involvement, and (6) there is an absence of any adverse or harmful effect of the activity on juveniles. Id. at 276-77.

Vukosavljevic claims that he was only convicted of purchasing one gram of cocaine under each count for a price of $80.00 each. Petitioner's Informal Brief, at 7. He further contends that he used the cocaine to self-medicate and that he shared the drugs, but did not sell them. Id. at 7-8. The IJ, however, found, based on the Presentence Investigation Report, that the offense involved a large quantity of cocaine – 2.5 kilograms. A.R. 435. See Alaka v. Att'y Gen. of U.S., 456 F.3d 88, 105 3d Cir. 2006) (Immigration Judge may properly consider factual findings in Presentence Investigation Report). See also Denis v. Att'y Gen. of U.S., 633 F.3d 201, 215 (3d Cir. 2011)

---

[3] Under § 1231(b)(3)(B)(iv), an alien who has been convicted of an aggravated felony for which he has been sentenced to an aggregate term of imprisonment of at least 5 years "shall be considered to have committed a particularly serious crime." Vukosavljevic's sentence, however, was less than 5 years' imprisonment, and thus that categorical prohibition is not applicable here.

(approving Board's use of conviction records and reliable sentencing information). The IJ further found that Vukosavljevic was a dealer and not just a user, and the Board agreed.

We see no misapplication of the Y-L- factors where, as here, a large quantity of cocaine was involved, and Vukosavljevic, as noted in the Presentence Investigation Report, was by no means only peripherally involved in dealing cocaine. Vukosavljevic did not meet his burden to establish that the transaction involved a very small quantity of drugs, or that his involvement in the criminal activity was merely peripheral. See Y-L-, 23 I. & N. Dec. at 277 ("only if *all* of these criteria" are demonstrated by the alien would departure from the presumption be appropriate). The agency thus committed no legal error in determining that Vukosavljevic is ineligible for withholding of removal under either the statute or the Convention Against Torture.

Vukosavljevic next contends that the agency used an improper legal standard for governmental acquiescence when considering his deferral of removal claim under the Convention Against Torture. Petitioner's Informal Brief, at 6, 9-11. To qualify for deferral of removal under the Convention Against Torture, an applicant must show that he is "more likely than not" to be tortured. 8 C.F.R. § 1208.16(c)(2). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person … when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Id. at § 1208.18(a)(1).

8

An applicant's eligibility for deferral of removal under the CAT is a factual determination that is ordinarily reviewed for substantial evidence, but because Vukosavljevic is subject to removal based on an aggravated felony, our review is limited to colorable constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(C)-(D); Green, 694 F.3d at 506. The IJ concluded that Vukosavljevic did not show that anything rising to the level of torture would happen to him upon returning to Bosnia-Herzegovina; his fears were based on what happened to him as a child, and the current country conditions evidence did not support his fear of torture. The Board agreed. This determination is unreviewable. See Kaplun v. Att'y Gen. of U.S., 602 F.3d 260, 271 (3d Cir. 2010). To establish acquiescence, an applicant must demonstrate that, prior to the activity constituting torture, a public official was aware of it and thereafter breached the legal responsibility to intervene and prevent it. 8 C.F.R. § 1208.18(a)(7). The applicant can meet this standard even where the government does not have actual knowledge of the torturous activity if he "produc[es] sufficient evidence that the government … is willfully blind to such activities." Silva-Rengifo v. Att'y Gen. of U.S., 473 F.3d 58, 65 (3d Cir. 2007). See also Myrie v. Att'y Gen. of U.S., 855 F.3d 509, 516 (3d Cir. 2017). The agency did not base its denial of deferral of removal on the issue of governmental acquiescence and did not misapply this standard in Vukosavljevic's case.

For the foregoing reasons, we will deny the petition for review.